Bruce Small et al., Appts., *v.* William I. Greenough et al.

---

Same v. Same.

The general rule is to permit a sale of any alleged interest in land of the defendant in a judgment. If the defendant has no interest, no title passes.

If there be a substantial doubt as to the defendant's interest, and the particular sale is not forbidden by statute, the question is left to be determined by an action of ejectment.

In this case, *held*, that there was nothing to prevent the application of the general rule.

(Argued April 25, 1887. Decided May 9, 1887.)

July Term, 1885, No. 75; January Term, 1887, No. 29, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeals from decrees of the Common Pleas of Northumberland County refusing a preliminary injunction and dismissing a bill in equity. Affirmed.

This was a bill in equity filed by Bruce Small and Susan E. Small, his wife, in right of the said Susan; Clarence Hawthorn

NOTE.—Execution will not be stayed on the ground that title to land seised is held by another than the defendant in the execution, since the sale could only pass to the purchaser the interest of the defendant. Smith v. Kiskadden, 5 Pa. Co. Ct. 138; Welsh v. Jermon, 4 W. N. C. 55; Smith v. Eline, 4 Pa. Dist. R. 490; Gamble v. Woods, 53 Pa. 158. It is said in Smith v. Eline, 5 Pa. Dist. R. 92, 18 Pa. Co. Ct. 560, 2 Lack. Legal News, 16, that the proper method to secure a permanent stay of execution is by bill in equity, and not by petition and rule, since the effect of the latter is to secure an injunction without the giving of security.

and Rose Hawthorn, his wife, in right of said Rose; Louisa H. Youngman and P. C. Oberdorf against Wm. I. Greenough, and Jacob Kramer, high sheriff of Northumberland county.

The allegations of the bill, supported by injunction affidavits, were substantially as follows:

I.   John G. Youngman died on the 13th of September, 1881, seised of most of the land proposed by respondents to be sold on the execution against John Youngman, a son of the decedent, testate.  By his will the testator devised two certain parcels of his real estate (designated in the partition proceedings hereafter adverted to as purparts one and two), to his daughter Louisa, with the power of sale of purpart one, upon the condition that the heirs all agree to the sale; but of the other absolutely, especially directed to said Louisa.  The testator also directs that the balance of his land may be sold, upon the agreement of the heirs; in which event the proceeds shall be equally divided among the heirs, after certain debts, legacies, devises, and bequests shall first have been provided for from the fund. No land, strictly as such, except perhaps a contingent life estate in all but purparts one and two, passed under the will to the execution defendant, and this, subject to the provisions of the will in nature of a trust for the specific uses named therein.

II.   Proceedings in partition under the will were commenced in the orphans' court on August 21, 1872, for the partition, valuation, and distribution of the testator's real estate, or the fund, as provided by that instrument.  They were conducted to the issuing of the writ directed to the sheriff, when their progress was arrested by the contract and agreement by the heirs and devisees for a settlement, partition, and distribution, on the basis of an amicable family adjustment.  This included the allowance of the claims of Susan E. Small, shown by the will in full, with interest, from the land or fund, of the whole estate, except purpart two, which, it was settled by the heirs and devisees, passed by the will absolutely to Louisa, and purpart one for life, contingent upon the exercise by her of the power of sale, just as specifically and absolutely devised to her, subject to "the agreement of the heirs" only.

III.   As represented to the principal complainants, and which they were induced to believe, and encouraged to rely upon, as the true state of things at the time, by the positive acts and silence of Mr. Greenough, the principal respondent, the sole

impediment to a conclusion of such amicable family settlement, partition, and distribution under the will, was the certain judgment bond or bill single, dated the 10th of July, 1867, for $1,800, with interest, held by Mr. Greenough, of the respondents, to which the testator was a party obligor, as surety for the said execution defendant, who was principal debtor therein. Subject only to that on an outstanding claim, the basis of settlement was fixed and agreed upon by the heirs and devisees themselves, which contemplate a partition or conversion of the land to raise a fund to answer the premises of a will, as well as the payment of such outstanding debt especially. George B. Youngman was also a party obligor.

IV. Thus matters stood, until February 3, 1877, when the said William I. Greenough took another bond or bill single, signed by the same John Youngman, the said execution defendant, as principal debtor, and by A. A. Youngman and the said George B. Youngman, as sureties, for the same principal debt. Mr. Greenough held those bonds as collateral securities until the 22d day of March, 1879, when, without entry of judgment or action or proceeding to enforce the collection, either against the principal debtor or the surviving sureties, or yet against the estate of the testator, as the deceased party, by sale and assignment of that date, under the inducement aforesaid, he passed both bonds to the said Susan E. Small in consideration that she paid the whole debt and interest thereof.

V. Without notice of the fact, just the day before, to wit, on March 21, 1879, the said William I. Greenough, however, to the prejudice of such securities, entered a judgment upon record against George B. Youngman, the principal surviving surety, to No. 109, June Term, 1879, in the common pleas of Northumberland county, wherein the said George B. Youngman owned valuable real estate besides his interest in the testator's estate. The debt of this judgment was in the penal sum of $3,800; the real debt at the date of entry was $1,554.51, with interest from entry.

VI. As additional inducement to the payment of the debt and interest on the bonds of July 10, 1867, to Mr. Greenough, the holder thereof, the principal debtor, John Youngman, the said execution defendant, made and delivered to the said Susan E. Small, by a separate paper, an assignment of his interest in his deceased father's estate, dated March 21, 1879, all of which

was followed by conveyances dated September 28, and October 7, 1880, of all the testator's real estate, except purparts 2, 5, and 6, the valuation of which latter had not yet been agreed upon, when Mr. Greenough's judgment of No. 279, September term, 1880, upon which the sale proposed by the respondents is to be effected, was discovered, in the summer of 1881.

But not informed of this last mentioned judgment, and dis- covering the judgment to No. 109, June term, 1879, entered as aforesaid against the said George B. Youngman, the said Susan E. Small, encouraged in the premises, by the acts and silence of Mr. Greenough, to believe she now at least by its payment could remove the sole remaining impairment to her titles and securi- ties acquired on the basis aforesaid, on October 26, 1880, paid the debt, interest, and costs of that judgment on the faith of a contract that it should be transferred to her.

VII. The conveyances to Mrs. Small were duly recorded un- der date of January 25, 1881, made in pursuance of the basis and contract of settlement, which arrested the partition pro- ceeding commenced in 1872, as already adverted to. She had been encouraged, by the positive acts and silence of Mr. Green- ough, to rely on a state of things essentially different from that he now, by his execution proceedings, insists upon, to her ir- reparable injury, if he be permitted to consummate his wrong- ful purposes in the premises.

To remove the impediment by the bonds against the testator, as well as against the said George B. Youngman, who died on April 9, 1880, before consummating the settlement on the basis agreed upon as aforesaid, and on faith that her rights as credi- tor, legatee, devisee, and vendee could thereby be secured, she paid the debt of these bonds, as well as the debt of the judg- ment entered to their impairment by Mr. Greenough, before his assignment, but on the very eve thereof. And under the same delusion, if delusion it be, afterwards, to wit, on the 23d day of February, 1881, relying in good faith, on the same premises, and especially on the acquisition of the interest of John Young- man, the said execution defendant in the bond in controversy, she unwittingly entered satisfaction on her judgment of the 29th of March, 1879. And thereupon on the 26th day of February, 1881, discovering her mistaken entry of such satisfaction, the said William I. Greenough, wrongfully and without authority, entered satisfaction also upon the judgment of the 21st of

March, 1879, against George B. Youngman, the debt, interest, and costs of which were paid by the said Susan E. Small, on the faith of a transfer as aforesaid, under date of the 26th of October, 1880, upon discovery as aforesaid.

VIII. By means whereof the said William I. Greenough wrongfully opened the door for entry of his judgment of July 10, 1880, against John Youngman, the execution defendant, in this controversy involved, and for the assertion of a pretended right as of the first lien creditor upon the interest of said execution defendant in the lands of the testator, as well as of those of the said George B. Youngman, deceased, so by his execution proceedings pretended to be remaining in such defendant; although the character and extent of such interest in land or fund remain in the orphans' court on partition proceedings, as to the estate of John G. Youngman, deceased, and on order of sale for payment of debts, as to the estate of George B. Youngman, deceased, to both of which proceedings the said Greenough appeared and was heard as a party, unsettled and unadjusted by final decree of distribution only; and this, notwithstanding the exclusive jurisdiction of that court of all the premises, and notwithstanding he has made and is still making his contest there.

IX. By means whereof also, as well as by his execution proceedings upon his said judgment of July 10, 1880, the said Greenough wrongfully intends the defeat of the said Susan E. Small's claims, by will and by judgment, or in right of first lien creditor in the premises, although he stands as her vendor of the securities, on one of which her judgment of March 29, 1879, was entered and improperly satisfied as aforesaid. The better to consummate this end, his wrongful endeavor is to prosecute his execution proceeding against her lien debtor, the said John Youngman, so as to become sheriff's vendee while her rights as devisee of the said John G. Youngman, deceased, as well as creditor, and as vendee both of the orphans' court and of some of the heirs and devisees, upon a contest waged by him in the same orphans' court, remain unsettled and without final adjudication, so that she may not know how to do or perform fairly to protect her just and lawful rights and estate in the same premises.

By such sale by the sheriff the said Greenough unlawfully intends to effect the discharge of the lien of the judgments and bonds, the debts of which were paid to him on the faith of a

transfer, by Mrs. Small, from the land of the said decedents as well as from the whole undivided interest of his execution debtor therein, while she shall be held in doubt and confusion in the orphans' court, under his contest there, as a party to the proceedings.

X. Instead of ordering satisfaction of her judgment of March 29, 1879, the said Susan E. Small had intended to order a release of a small piece of land of the estate of her deceased brother, George B. Youngman. The said improper satisfaction was entered February 23, 1881, long after Mrs. Small had acquired her titles by conveyance and assignment, and long after these had been put upon record. And on June 27, 1881, her application by petition to the court to strike off such improper and mistaken entry of satisfaction upon record was made. After a hearing, upon a rule, at which Mr. Greenough appeared, and was heard, the said satisfaction was decreed to be stricken off and the lien of the judgment restored, upon the adjudication that the satisfaction was improperly and by mistake entered upon the record.

During the interval in which the record stood satisfied no property or estate which might have been the subject of a lien by judgment was acquired or lost by the principal debtor in that judgment, who is also the execution defendant in the proceedings now in question.

XI. The judgment entered July 10, 1880, in favor of Mr. Greenough and against the said John Youngman was upon a mortgage bond with power of entry, for a debt contracted in and about the erection and construction of a large dwelling house upon the land and separate estate of the wife of the defendant, and was secured by her mortgage of the same premises, entered and recorded the — day of ——, 1872.

It was "not dreamed of" by the parties in interest in the said decedents' estates as a possible encumbrance or impediment in the way of an amicable family settlement thereof.

And the money which constituted the debt of this mortgage and bond was advanced by the mortgagee, not directly to either of the parties mortgagor, but only as the improvement of such separate estate of the wife progressed, and was directly paid out by the mortgagee to the contractor, material man, and builder. And no effort to enforce the collection of this debt, in whole

or in part, against the said mortgaged premises, has to this day been made by the mortgagee.

XII. On the 24th of October, 1883, A. A. Youngman, one of the heirs and devisees of the said testator, as well as one of the administrators of the said George B. Youngman, deceased,. by petition to the orphans' court, revived proceedings in partition therein, under the will, which were now conducted to a conclusion, so far that the report of inquest was confirmed absolutely by the orphans' court, and that the real estate of the said testator has been awarded and decreed by the said court to be taken and held at the appraisement, as shown by the return of the inquest; to the said Susan E. Small, the certain land described in report of inquest as purparts 1 and 3, as party, heir, and vendee of heirs; also purparts 5 and 6, as party and heir; to Louisa H. Youngman, purpart 2, as party, heir, and devisee; and to Samuel Byerly, purpart 4, as party and vendee of heirs.

XIII. As judgment creditor of John Youngman, who was an heir and party to the said partition proceedings, by judgment of July 10, 1880, entered upon the mortgage bond as aforesaid, at the return of inquest, made December 3, 1883, Mr.. Greenough appeared, and on his petition to the said orphans' court, a rule was granted and issued against the parties and heirs. to show cause why he should not be admitted to file exceptions and be heard as a party. This rule was returnable January 7, 1884. By reason thereof the decree of confirmation was refused by the orphans' court, until afterwards, on January 7,. 1884, the said rule was discharged by consent. And thereupon, as well upon the petition of the said Greenough as upon that of the heirs and devisees, after first making decree of confirmation of the return of inquest, the said court appointed George. Hill, Esq., auditor to ascertain liens, encumbrances, and owelty. And Mr. Greenough appeared before the auditor and contested there, as well as afterwards upon exceptions to the auditor's report in court, and was fully heard, although the contest was there limited chiefly to the question of priority of lien, not upon the land in question, but upon the fund raised upon the proceedings in partition.

XIV. And the land levied by Mr. Greenough's execution. upon his judgment of July 10, 1880, as of a pretended interest remaining in the said execution defendant, which was of the estate of George B. Youngman, deceased, was sold on January

19, 1884, pursuant to an order of the orphans' court, issued December 19, 1883, without the pretense of irregularity, for the payment of debts. Mr. Greenough was himself a contestant bidder at the sale.

XV. After the decree of confirmation of the report of inquest, and the allotment at her bid on partition by the orphans' court, as to the purparts aforesaid, and having become the orphans' court vendee of the land and premises which had been of the estate of George B. Youngman, deceased, sold on the order of the orphans' court for the payment of the debts of the said decedent, the said Susan E. Small went into the exclusive possession thereof, granted and conveyed parts of the lands and premises so allotted and assured unto her, to her cocomplainants, as shown fully by the bill, who, under such grant and assurances, went into the possession of the parts so conveyed to them, when she and they, in good faith, relying upon the titles so assured unto them, made the large and valuable improvements, shown alike by the bill and the advertisements by the sheriff for the sale thereof. These were made long before Mr. Greenough issued his venditioni exponas for such sale, but after he had put on record his admission that the lien of his judgment had been discharged from the land in question, or from his said judgment debtor's interest therein, "by virtue of the said partition proceedings by reason of the conversion of the share of the said judgment debtor into the valuation money."

XVI. Thus, all the land, a pretended remaining interest in which, as of the execution defendant, is unlawfully and wrongfully undertaken and proposed to be sold by the defendants, on a venditioni exponas issued upon the judgment of July 10, 1880, at the instance of the plaintiff therein, whose claim is in course of adjudication in the orphans' court, on proceedings to which he has always been an active party on his own petition, and where he has been fully heard, which proceedings are there still pending and undetermined. And this to the great prejudice and irreparable injury of the rights of the said Susan E. Small and her vendees in all the premises, who have paid the purchase money, gone into possession, and made the valuable improvements of the land in question, upon the faith of their titles acquired as aforesaid, by contract and conveyance of the heirs and devisees of both the said decedents, and also as the orphans' court vendee on an order and sale for the payment of

debts and in partition as aforesaid, to which proceedings Mr. Greenough, on his own petition, being made a party, ought in equity and good conscience to be held, not only as having encouraged such reliance on their titles by the complainants, but also as a party vendor.

XVII. It is charged, therefore, that by the said sales of the heirs, as well as by the said assurances by the said orphans' court proceedings, and under the will of the decedent testate, the fund is substituted for the land, and that it is an unlawful and inequitable abuse of right and power in all the premises to permit the respondents to consummate their proposed sale by the sheriff, as by them contrived in the same premises, whereby the pretense of an outstanding title, as in the sheriff's vendee, shall obtain to the irreparable injury and interminable prejudice of and interference with the just and lawful rights of the complainants therein, as of an undivided interest or estate in the said land, to the conveyance of which to the complainants, Mr. Greenough, the said execution plaintiff, ought in equity and good conscience to be held as a party vendor.

XVIII. On the faith of their titles, so acquired as aforesaid, and going into possession after payment of the purchase money, especially of the execution defendant's interest as aforesaid, and by satisfaction of the judgments and bonds aforesaid, if this be held efficacious, the valuable buildings and improvements described in the levy, seizure, and notice of the proposed sale by the said respondents were made and erected in good faith, and while encouraged by the positive acts and silence of the said Greenough to rely on a different state of things from that on which he now insists as aforesaid.

XIX. The consummation of the said proposed sale by the sheriff would defeat the rights of the complainants under the will of the said John G. Youngman, deceased, as well as their rights as heirs and creditors of the said George B. Youngman, deceased, by a proceeding by execution upon a judgment which never was a lien upon either of said decedents' titles, and only upon the said defendant's interest, in the event he takes as land, and then subject to the payment of debts and the provisions by will; all of which ought first to be ascertained by proceedings directed to the purpose in the orphans' court, where such laudable endeavor is still pending, as well as the same subject-matter of this controversy.

The bill concluded with a prayer that the defendants be enjoined from the further prosecution of the execution proceedings and restrained from the sale of the lands and tenements so proposed by them to be sold, etc.

The defendant Greenough filed the following affidavit:

"William I. Greenough, defendant, being duly sworn, saith:

"That he recorded judgment against John Youngman to No. 279, September term, 1880, by entry on warrant of attorney, in the said county, on July 10, 1880; that he issued thereon a fieri facias, returnable to December term, 1883, of the court, and a levy was made November 26, 1883, upon the lands mentioned in said bill, which were upon inquest duly condemned, and to No. 63, May term, 1885, issued a writ of venditioni exponas for the sale of the same lands, and, as mentioned in said bill, they have been advertised for sale by the sheriff upon the said writ.

"That the lands so levied on consist of part of the lands of which John G. Youngman, deceased, died seised, of the land of George B. Youngman, deceased, in part. That the right of John Youngman therein consists of such interest as he acquired as devisee of John G. Youngman, deceased, and as heir of George B. Youngman. That by an order of the orphans' court, the real estate of George B. Youngman was sold in manner stated in the bill; but as to the piece now offered at sheriff's sale, the sale at orphans' court sale has not been finally confirmed, nor the title of John Youngman finally ended, and proceedings in partition in the orphans' court now commenced upon the petition of A. A. Youngman for the partition or valuation of the lands of John G. Youngman, deceased, which proceedings have been continued so far that offers to take have been made by some of the devisees, of all the parts at the valuation fixed by the inquest, but the several pieces have not yet been allotted by final decree of court.

"It is claimed, whether the claim is just or not, that one of the pieces of land brought into the partition was devised by the will of John G. Youngman to one of the children, Louisa H. Youngman, in severalty; and after the death of John G. Youngman and before the institution of the said proceeding in partition, all the other heirs and devisees joined in conveying, by deeds for the valuable considerations therein contained, all the lands of John G. Youngman, deceased, except two pieces of comparatively small value; and also the part

of George B. Youngman's land was offered at sheriff's sale. All the lands so conveyed were sold and conveyed, as deponent is informed, after the entry of deponent's judgment against John Youngman, and were subject to the lien of it.

"Deponent had hoped that through the said proceedings in partition and the orphans' court sale his right, through his said judgment, could have been adjusted; but his right to appear in either case has been in some respects denied to him, because he is not a judgment creditor of George B. Youngman, and because he is only a lien creditor of one of the heirs of John G. Youngman. And he states, as an instance, that while he is convinced that the proceeding in partition is void because partition was prayed, under the will of John G. Youngman, of a piece of land devised in severalty to Louisa H. Youngman, and because partition was prayed of all the land, conveyed in severalty to Susan E. Small, by the heirs, and that, at least as to all these lands, the said partition was void and of no effect to discharge the lien of said judgment of deponent against John G. Youngman; yet it has been held in said partition proceeding that deponent has no standing in court to plead such want of jurisdiction in the orphans' court in this case. To be put in a position to determine the question whether his lien is discharged by the said partition proceeding, and whether the said court has jurisdiction in partition, and for other purposes, the said deponent has proceeded upon his execution to sell the interest of John G. Youngman; under which sale the purchaser may maintain ejectment for the lands, and the right of deponent be determined.

"Deponent intends to file an answer to this bill in full, but replies and explains as to some part of it as follows:

"John Youngman came to deponent saying he intended to pay the single bill of February 5, 1877; upon deponent learning that the means of payment came from Susan E. Small, he wrote upon it the assignment in these words: 'For value received I hereby assign, transfer, and set over unto Susan E. Bright the within single bill and all money due thereon, and also the within recited and mentioned bonds executed by John Youngman, George B. Youngman, and John G. Youngman (the latter long since deceased), without recourse to us and at her own risk. A separate assignment is also put on back of the above mentioned bond.' Signed W. I. Greenough, John B.

Packer, by his attorney, W. I. Greenough; and then handed bonds and single bills to John Youngman, intending the transfer to be an assignment to Mrs. Small.

"Mrs. Small was not present, nor did deponent have any interview with her about it at any time; and her name was only mentioned in connection with the transaction upon making the assignment as aforesaid.

"As to all the sections in the bill, deponent says:

"That before the institution of the partition proceedings and the hearing therein before George Hill, Esq., auditor, deponent did not receive notice, information, or knowledge of any acts, discussion, intention, plans, propositions, contracts, or doing of any kind by and between the heirs and devisees, or any of them, of John G. Youngman, or of George B. Youngman, in reference to said estates, or the settlement, sales, or disposition of the same or any part thereof, except so far as he may have had constructive notice from the records.

"As to the statement in these words: 'And the said Greenough had always been the legal adviser of said George B. Youngman, the acting executor, as well as heir and devisee, who was a party to such representations and inducements to the said Susan E. Small,' the said deponent says that, so far as it relates and refers to him, the said statement is false; that he was not the legal adviser of George B. Youngman, as executor, or as heir or devisee of John G. Youngman in any respect or at any time; nor was he the legal adviser of said George B. Youngman, in any business transaction; nor did he have any conference or consultation with the said George B. Youngman, at any time as to any matters between the heirs and devisees, or any of them of John G. Youngman, deceased, in reference to said estate or the settlement, sale, or disposition thereof, or any part thereof.

"From the evidence taken before George Hill, Esq., auditor, deponent denies that there was a sale to Mrs. Small of the land conveyed to her before the death of George B. Youngman, or that there was any agreement for sale until a short time before the deeds were made, September 26, 1880, and October 7, 1880, or that there were any contracts for such sale in writing other than the execution of the deeds, or that the whole of John Youngman's part of the purchase money of the Arch street property was paid until the receipt of December 4, 1880, was given.

"The deponent does not admit the other matters stated in the bill and not herein specially referred to and mentioned."

Upon refusing the preliminary injunction ROCKEFELLER, P. J., delivered the following opinion:

I am of opinion that all the important and material matters contained in this bill were fully considered and disposed of at the present term in the matter of the proceedings in partition of the real estate of John G. Youngman, deceased, and the special return to the order of sale of the real estate of George B. Youngman, deceased.

Wm. I. Greenough, Esq., is the plaintiff in a judgment, duly entered in this court against John Youngman, and has caused all the right, title, and interest of the defendant in his father's lands to be levied, condemned, and advertised to be sold.

The defendant has no defense and is not objecting.

The plaintiffs in the bill claim to own the whole of the lands by virtue of certain deeds from the other heirs, and also by virtue of certain proceedings in partition.

Mr. Greenough claims that he is a lien creditor of John Youngman, one of the heirs, his lien having been entered before the conveyances, and also that the partition proceedings were void for want of jurisdiction. In order to test these matters he has levied upon and proposes to sell any interest that John Youngman has in the lands and then try the title in ejectment. This I think he has a right to do, and cannot be interfered with by third parties, although it may becloud their title. If John Youngman has no title, Mr. Greenough will take nothing by the sheriff's sale. In the said opinion of this court, filed at this term, the said partition proceedings have been sustained, and, that being so, Mr. Greenough's lien is discharged. He must come upon the fund. The titles of the parties electing to take the several purparts will be good and valid when they are finally awarded, unless the partition proceedings are void. We think that as the parties and the liens against the respective heirs would have followed each one's share in the land the same result would follow by their consenting to a partition as made by the inquest.

Mr. Greenough complains that the valuation was too low, but he was not in a position as a lien creditor of one of the heirs to object. His right to object was denied. He now alleges that

the proceedings in partition were void for want of jurisdiction. The decrees of the orphans' court in matters in which it has jurisdiction are conclusive and cannot be impeached in collateral proceedings. Mr. Greenough desires to try the question as to whether the orphans' court had jurisdiction, alleging that if it had not the proceedings were void, and that the parties electing to take the lands at the appraised value got no title. This we think he had a right to do; and this court has no right to stay his execution, although the title of the parties to whom the lands may eventually be awarded may be beclouded.

For this reason the application for a special injunction to restrain the defendants is refused.

The plaintiffs appealed and assigned the refusal of the preliminary injunction as error.

Subsequently the court dismissed the bill.

The plaintiffs thereupon appealed from the decree and assigned as error the dismissal of their bill.

*Wm. A. Sober,* for appellants.—By the act of April 10, 1849, Purdon's Digest (1883), 538, it is declared that "the jurisdiction of the several orphans' courts of this commonwealth, in partition and valuation of the real estates of decedents, shall extend to all cases of testacy wherein the whole or part of the real estate of the decedent may be devised to two or more children; and when such real estate is devised to two or more children, to be held and enjoyed in unequal proportions, the said court shall decree such an appropriation of the moneys arising therefrom as will best effectuate the intentions of the testator."

Enough appears in this case to support the jurisdiction of the orphans' court by partition, if for no other reason, to fix and determine the several interests of the heirs, legatees, and devisees, and the valuation thereof. It is not the case of a total want of jurisdiction of subject-matter or parties, so that consent or appearance cannot make a decree therein effectual and binding upon the parties or privies.

A decree of partition not appealed from in a court of probate is conclusive upon the parties and their privies as to the state of the title at the time of its rendition, and constitutes a bar to a claim of greater interest in the land than the share decreed to them. Davis v. Durgin, 64 N. H. 51, 5 Atl. 908.

In Barclay v. Kerr, 110 Pa. 130, 1 Atl. 220, it was held that the question for defendants was not whether plaintiffs had joined with themselves persons who had no interest in their title; but whether all who held under A (the decedent) were included; and this was a case of partition in the common pleas.

An order confirming the report of an inquest of partition is a definitive decree within the rule that "any person aggrieved by a definitive decree of the orphans' court may appeal to the supreme court." Christy's Appeal, 110 Pa. 538, 5 Atl. 205.

The parties to a partition suit are bound by the judgment therein, whether their interests were rightly stated or not; and an adjudication that they were tenants in common of the land adjudged to be partitioned concludes a party to the action, served with process, although he did not appear and although his title to a part of the land partitioned was in severalty. This was a fact he was bound to put in issue and have determined on trial. Masten v. Olcott, 101 N. Y. 152, 4 N. E. 274.

A decree of partition in the orphans' court is essentially as conclusive of the right as a judgment of partition by a court of law. Herr v. Herr, 5 Pa. 428, 47 Am. Dec. 416.

When, therefore, a party having no title under the intestate laws petitioned for an inquest, and his allegation of title as tenant in common was not disputed, it was held, in an action of ejectment brought against him to try the title to the land contained in a purpart accepted by, and decreed to, him by the orphans' court, that the record of the proceedings in partition, and the decree founded thereon, were necessarily conclusive of his title. Herr v. Herr, 5 Pa. 428, 47 Am. Dec. 416.

The confirmation by the orphans' court of an appraisement made for the benefit of the widow of a decedent, under the act of April 14, 1851, is an adjudication to the widow of the property mentioned in the inventory, and is conclusive against a creditor as a judgment *in rem,* which determined the status of the property, and was binding on all the world. Runyan's Appeal, 27 Pa. 121.

A decree of the orphans' court, unreversed and unappealed from, cannot be questioned in a collateral suit, except in cases of fraud, or where the defect plainly appears on the face of the proceedings; and where a party relies upon fraud, it ought to be distinctly and positively alleged, and not inferred merely

from circumstances. Orphans' Court use of Groff v. Groff, 14 Serg. & R. 181.

A decree of the orphans' court, in proceedings for partition of the real estate of a decedent, awarding the property to one of the heirs at the appraisement is conclusive of the title as against all parties claiming under the decedent or his heirs, and cannot be collaterally impeached. A decree awarding the premises to one of the heirs, at the appraisement, devests the title of the other heirs and all claiming under them. Merklein v. Trapnell, 34 Pa. 42, 75 Am. Dec. 634.

The orphans' court by receiving a petition for an inquest upon the real estate of a decedent, and thereupon awarding an inquest and consummating partition, thereby decides that the petitioner was a proper party to the proceedings; and such adjudication cannot be questioned in a collateral matter, by a stranger to the title of the decedent. Lair v. Hunsicker, 28 Pa. 115.

At the return of the inquisition objections may be made both to the right to make partition and to the partition itself. A petition for partition and the writ named the widow as a party; the return of inquisition recited that the parties were warned to appear; the inquisition set forth that the premises could not be divided and valued by them; this was approved by the court; the premises were sold by order of the court and the sale confirmed. Held, that this was a final decree and conclusive of the facts which led to the decree. Vensel's Appeal, 77 Pa. 71.

Decrees of the orphans' court are not examinable, collaterally, for errors apparent; hence, when in partition on petition of collateral heirs, land was assigned by the court to the widow at a valuation, and the time for appeal had elapsed, a purchaser cannot object for the defect, although such decree was not authorized by the act of assembly, which allows an assignment to heirs only. Painter v. Henderson, 7 Pa. 48.

If what Mr. Greenough alleges in his petition to be admitted to file exceptions to the report of inquest at the return thereof, before confirmation, be true, he would have been properly heard. The mortgagee (if an undivided estate) may object to fraud or unfairness affecting his interest, but if the partition be fairly made he cannot gainsay it. He cannot do any act affecting the title or estate of his mortgagor. He cannot object to partition by the parties themselves: if competent, they are not bound to go to law to make partition. Long's Appeal, 77 Pa. 151.

Mere strangers, being judgment creditors of the heir who owned the land, will not be permitted to dispute it. *Re* Darlington, 13 Pa. 430.

But the extent of the interest of John Youngman, the heir and devisee, can be ascertained only after the settlement of the decedent's estate, under the will. Hence, the jurisdiction of the orphans' court is exclusive. Maurer v. Kerper, 102 Pa. 444.

And the common pleas, even as a court of equity, cannot interfere with a matter of which the orphans' court has exclusive jurisdiction. Loomis v. Loomis, 27 Pa. 233.

An omission to assert a right will postpone only when the silence of the party is a fraud; but acts done are on a different footing, and by these a party may be postponed without fraud, upon the principle that between two innocent persons the loss shall fall upon him whose acts occasioned it. Beaupland v. McKeen, 28 Pa. 124, 70 Am. Dec. 115.

Where the real estate of the wife is levied on by a creditor of her husband's, and is about to be sold, it is error in the court to dismiss a bill filed by her, for a preliminary injunction to restrain the execution creditor from selling it. Hunter's Appeal, 40 Pa. 194.

The power to restrain execution proceedings by injunction, in proper cases, is repeatedly asserted by the court. Pittsburgh & L. E. R. Co. v. Bruce, 102 Pa. 23; Winch's Appeal, 61 Pa. 424; Taylor's Appeal, 93 Pa. 21.

The act conferring equity jurisdiction seems specifically to point to the kind of injury shown by the bill and the evidence in this case. It is to prevent or restrain the commission or continuance of acts contrary to law and prejudicial to the rights of individuals. Act of June 16, 1836, Purdon's Digest, 691.

The courts, in granting injunctions, are not restricted to acts contrary to law, but may exercise this power to restrain acts contrary to equity also, equity being so much a part of the law of Pennsylvania that the word "law" often means both law and equity, or either. Stockdale v. Ullery, 37 Pa. 486, 78 Am. Dec. 440.

*S. P. Wolverton* and *Charles M. Clement,* for appellees.—
The plaintiff in the judgment had a full and perfect right to issue execution upon it immediately upon its entry, and he has done nothing to take away or impair that right. The purchase,

by a stranger to him and to the judgment, of land bound by it, certainly cannot deprive him of the right. Conversion of land into money by the law, so that the money is substituted for the land, will discharge the lien of a judgment; but a lien creditor may test the validity of such conversion, by means of an ejectment, by selling the lands under his judgment. Alleged frauds are tested in that way.

Judgment in partition does not decide title or create a new title. It dissolves tenancy in common, but it does not devest title in common until payment of the shares of the other owners. McClure v. McClure, 14 Pa. 134.

In partition in the orphans' court the confirmation of a report of sale stating that two thirds of the purchase money was to be paid when the deed was made and the remaining third at the death of the widow of the intestate is not a conversion of the real estate into personalty until the conditions are complied with so far as to entitle the purchaser to the deed. Biggert's Estate, 20 Pa. 17.

The pendency of any proceeding at law or in equity to which the plaintiff is a stranger will not take away or impair his right to execution. Bachman v. Chrisman, 23 Pa. 162; Gibbon's Appeal, 104 Pa. 587.

The pendency then of the partition proceeding does not prevent a judgment-lien creditor from pursuing his remedies on the judgment, against the share of one of the parties, simultaneously with the partition proceeding. But what is there to prevent him from proceeding to a sale after the proceeding is closed by a final decree and distribution when, as in this case, the validity of the proceeding is questioned for want of jurisdiction?

The complainants say that the sheriff's sale will becloud their title to three out of the five pieces levied on and advertised for sale; but the sale does more than becloud the title, it either defeats it utterly or has no effect upon it whatever. It defeats their title if they have not a title paramount to his lien, and it has no effect whatever if they have superior rights. In the one case he has a right to sell, and in the other his sale passes no title from them; but either way it will do them no harm.

The complaint is, at most, that the sale will becloud the title and render it unmarketable; but that is precisely what was complained of in Taylor's Appeal, 93 Pa. 21, where the court says: "As a general rule it has been the practice in this state

for a judgment creditor to seize and sell in satisfaction of his debt any real estate in which his debtor has or is believed to have an interest. Whenever such interest is alleged, the creditor is permitted to proceed with his execution; and if there be any question in regard to title, it may be raised and determined afterwards in an action of ejectment. The reason why the creditors' execution will not be enjoined in such cases is that to do so would in effect withdraw from the consideration of a jury facts which properly should be decided by them. . . . It may happen that the bona fide owner of real estate is subjected to the inconvenience and annoyance of having his property levied on for the debt of one who, perhaps, is not and never has been interested therein; and thus his title may, for the time being, be clouded and rendered unmarketable; but such results cannot be wholly avoided."

The plaintiff has a right to sell by execution the interest of his debtor, although the land, on which the levy was made, be in the adverse possession of another, claiming under a paramount title; and therefore it is error in the court to stay the proceedings on that account. Jarrett v. Tomlinson, 3 Watts & S. 114; Neel v. Bank of Lewistown, 11 Pa. 17.

The general rule unquestionably is to permit a sale of any alleged interest in land of defendant in the judgment. If the defendant has no interest in the land, no title passes. The question of title is usually left to be determined in an action of ejectment. Hunter's Appeal, 40 Pa. 194; Reeser v. Johnson, 76 Pa. 313; Taylor's Appeal, 93 Pa. 21; Lyon's Appeal, 61 Pa. 15; Davis v. Michener, 106 Pa. 395.

PER CURIAM:

One of these appeals is from a preliminary decree and the other from the final decree dismissing the bill in the same case. Practically the cases are one.

The general rule in this state unquestionably is to permit a sale of any alleged interest in land of the defendant in the judgment. If the defendant has no interest in the land, no title passes by such sale. If there be a substantial doubt and the particular sale is not forbidden by an act of assembly, the question is left to be determined in an action of ejectment. Reeser v. Johnson, 76 Pa. 313; Davis v. Michener, 106 Pa. 395.

There is no fact shown here to take this case out of the general rule, and there was no error in dismissing the bill.

Decree affirmed in each case and the appeals dismissed, at the costs of the appellants therein.